**CREAMER, Plaintiff-Appellee, v. PAYER, Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22454. Decided June 9, 1952.

Roudebush, Adrion, Sanborn, Brown & Corlett, Myron W. Ulrich, of counsel, Cleveland, for plaintiff-appellee.

Orgill, Maschke, Wickham & Loux, H. Frank VanLill, of counsel, Cleveland, for defendant-appellant.

## OPINION

By SKEEL, PJ.

This appeal comes to this Court on questions of law from a judgment entered for the plaintiff upon a verdict of a jury in the Common Pleas Court of Cuyahoga County, Ohio. The action is one seeking to recover of the defendant the value of necessaries furnished the defendant's wife, the action being founded upon what was then known as §8003 GC (Now §8002-3 GC, eff. 8/23/51). The wife of the defendant was the daughter of the plaintiff.

The defendant and Lida Creamer Payer, daughter of the plaintiff, were married in California April 3, 1929. There were three children born of said marriage.

The plaintiff's petition alleges that the defendant placed his wife in a sanitorium at a time when she was mentally sick and unable to provide for herself and thereafter abandoned her, failing to provide her with any support whatsoever, and that the plaintiff (mother of Lida Creamer Payer) was compelled to furnish all necessary support and that the defendant as the husband of Lida Creamer Payer is indebted to her to the reasonable value of the support furnished, which is alleged to be $28,806.06.

The answer of the defendant admits Lida Creamer Payer to be his wife, and alleges affirmatively that from the earliest date of the alleged expenditures made by the plaintiff, he has been living apart from his wife by reason of her aggression against their marital relationship and her extreme cruelty and gross neglect of duty and for that reason he has refused to support and maintain his said wife.

The plaintiff's reply is a general denial of the affirmative allegations and new matter contained in defendant's answer.

The bill of exceptions does not contain all of the evidence

introduced upon the trial of the case. There is a stipulation that certain testimony of plaintiff and Lida Creamer Payer with respect to proof of damages is reduced to "the following stipulation." The stipulation then describes what was offered but the part setting forth amounts was stricken by the trial court before settling the bill of exceptions.

The evidence discloses that the defendant and Lida Creamer Payer were married in California in April, 1929, and that there were three children born of said marriage. They first lived in Los Angeles, then moved to Cleveland, Ohio, in June, 1930, then to Hastings-on-the-Hudson, N. Y., in 1934; to Dareen, Conn., in 1935, and in the early part of 1937, to what was known as the "Wrenn Cottage at Wilson's Point, Conn." The plaintiff's testimony is that she and Mr. Payer's father were compelled to give financial help almost continuously and that in 1933 the defendant and his wife were separated for a short time due to defendant's conduct. In 1937, she visited the home of her daughter at Wilson's Point, and testified to certain strange conduct on her part. In September, 1938, she received from her daughter a letter dated Sept. 27th which was introduced into the record. A reading of the letter shows it to have been written by one with a confused mind. The letter is irrational and incoherent. The plaintiff upon the receipt of this letter, called her daughter by long distance telephone to see if everything was all right, offering to come east but the offer was refused. The plaintiff next saw her daughter in Los Angeles, Calif., where she was taken by the defendant and hospitalized. She was then examined by a specialist in mental diseases, the diagnosis being "Schizophrenic reaction."

The evidence of the defendant in support of his claim of his wife's disloyalty to the marital relation, is based on two letters admittedly in the handwriting of defendant's wife and the testimony of a maid employed by the Payer family July 5, 1938, and the testimony of the defendant himself. The two letters, the maid testified were given her by Mrs. Payer to read and then were to be given to Mrs. Daughterty who would pick them up for a Mr. Lydgate with whom it is claimed Mrs. Payer had had improper relations. No one ever called for the letters and the maid put them in the kitchen where all the household bills were kept, where they remained from their delivery to her in August, or the early part of September, until just before Thanksgiving. Mrs. Daugherty, described as Mrs. Payer's best friend, and who testified in her behalf at the trial, said she knew nothing of the letters and the maid testified that Mrs. Payer did not inquire about them at any time

after their delivery. The contents of the letters indicate mental instability.

The maid further testified to the effect that about 2 o'clock A. M. on a night in the middle of August, the exact date of which she could not remember, Mrs. Payer came into her room, awakened her out of her sleep and told her of having illicit relations with a Mr. Lydgate and that she loved him more than her husband. She further testified that on the afternoon of the Saturday before Thanksgiving, Mrs. Payer gave her two letters and a set of keys. The letters were to be given to Mrs. Daugherty. Mrs. Payer said she was leaving Mr. Payer to go to Lydgate and she, the maid, was to take care of the children. About this time Mr. Payer came in, and the maid gave him all the letters and the keys and told him what Mrs. Payer had said. Mr. and Mrs. Payer then went to another part of the house and the maid testified that she did not see Mrs. Payer again until Monday morning when Mrs. Daugherty took her to New York City.

The defendant's testimony as to what took place the Saturday before Thanksgiving, 1938, was as follows:

"Q. Now, things were going along normally at your home, weren't they, until about the Saturday before Thanksgiving, '38?

"A. Quite.

"Q. And something happened on that day?

"A. Yes, sir.

"Q. What happened?

"A. Why, Pearl DeFeo, the maid, handed me some letters and told me that Mrs. Payer had decided she was going to go away with Bill Lydgate. And I was quite upset about it. And in the ensuing two or three days there was a lot of unpleasant conversation and . . .

"Q. What did Mrs. Payer say about it, if anything?

"A. She said that she wanted to go away with him and she wanted to take Dennis with her but didn't want the other two children.

"Q. Was Dennis your daughter?

"A. Yes, sir.

"Q. And the other two children were sons?

"A. That is right, yes, sir.

"Q. What did you say to that?

"A. I said that I would, under no circumstances, permit the family to be broken up, that if she wanted to go off with Mr. Lydgate that was up to her.

"Q. Well, now, I think—was that Saturday on which you got those letters, or not?

"A. I think it was. I wouldn't be positive.

"Q. How soon after you found those letters and found out about the situation that those communications indicated, plus what the maid told you,—Pearl,—what did you next do about it besides talking to Mrs. Payer about it? I have in mind going away somewhere. What happened then? Let us get to it quickly.

"A. Well, I don't remember particularly anything I did. Except that the following Monday I took the train to New York to my place of business as I ordinarily did."

Defendant further testified that he did not know Mrs. Payer was taken to a New York doctor until Mrs. Daugherty called him at his office and said she had become hysterical. Mrs. Daugherty, however, testified that she got a telephone call from Mr. Payer saying Mrs. Payer was not well and requested her to take Mrs. Payer to a New York doctor because he felt the situation was urgent. On the trip to New York Mrs. Daugherty described Mrs. Payer as suffering a nervous breakdown which was also the diagnosis of the New York doctor.

Mr. Payer, as soon as he got Mrs. Daugherty's call, came to the doctor's office and from there he took his wife by airplane to Cleveland and then to California where he placed her in a sanitorium, under the care of a mental specialist and contracted to pay the hospital and medical bills up to $1,000.00. He then left California and some time in February refused any further care or support and admits he has paid nothing further, justifying such refusal on the ground of her alleged infidelity.

From a judgment entered for the plaintiff, this appeal is taken in which the defendant claims the following errors:

"1. In overruling defendant's motion for directed verdict for the reason that there was no claim of insanity set up in the reply of the plaintiff, the undisputed evidence showing the adultery of defendant's wife causing the separation.

"2. In overruling defendant's motion for a directed verdict for the reason that there is no evidence in the case which in the slightest degree shows that at the time of the claimed adultery the plaintiff's daughter, Mrs. Payer, could not distinguish between right and wrong.

"3. In entering final judgment in this case not sustained by sufficient evidence and against the weight of the evidence.

"4. The verdict is contrary to law.

"5. In its charge to the jury on weight of the evidence required to sustain plaintiff's case.

"6. In its charge to the jury as to burden of proof with respect to aggression causing separation from wife.

"7. In restricting jury's consideration to adultery of defendant's wife when answer of defendant charged her with extreme cruelty and gross neglect of duty.

"8. In sustaining the objection to the question put to Dr. Burns by defendant on cross-examination and his answer thereto."

It must be assumed that the first assignment of error is directed toward the defendant's motion for a directed verdict at the conclusion of the taking of all the evidence in the case. In considering this claim of error the court must consider the issues as presented by the pleadings. The plaintiff's claim is for necessaries furnished defendant's wife as a result of and because he failed to provide for her (§8003 GC). It is admitted that the plaintiff furnished necessaries to defendant's wife and that subsequent to January, 1939, he refused to give her any support whatsoever claiming the right to refuse because of her aggressions to-wit, adultery. The plaintiff therefore made out a prima facie case as to the right to recover the reasonable value of necessaries furnished, the relationship and the refusal to support her daughter being in effect admitted. The defense of the wife's aggression against the sanctity of the marital relationship is an affirmative defense which the defendant must sustain by the preponderance of the evidence. The defendant assumes that such aggression (adultery) is uncontradicted. Such assumption cannot be supported. The only evidence comes from the mouth of Mrs. Payer as related by a servant. As above indicated the servant was aroused out of a deep sleep at 2 A. M. by her employer of less than six weeks duration and as shown by the direct testimony.

"She came into my room about 2 o'clock in the morning and told me she was out and she was very thrilled and that she had had sexual intercourse with Mr. Lydgate."

On cross-examination she said:

"She got talking about the play when she came in she started talking about how the play was progressing and all of a sudden she came out with it."

In the consideration of this evidence, which together with the letters is the only evidence of infidelity, in the light of all the surrounding circumstances, the incoherent letter written to her mother, the finding of her mental condition by the mental specialist, and the opinion evidence as to the time it would take such mental instability to develop and the evidence of Mrs. Daugherty about Mrs. Payer's nervous state in April when she took her on a short vacation, in the hope that a trip might be of some help, together with Mrs. Payer's evidence that she has no recollection of anything during that

time, and other supporting evidence, without even a suggestion of other misconduct or indiscretion of any kind, it must be evident that reasonable minds might come to different conclusions as to whether infidelity was in fact established by the proper degree of proof. It might, under all the circumstances, be concluded that the statement was the illusion of a troubled mind. In all events the question was one for the jury and under no circumstances could infidelity be said to be an admitted fact.

It is also claimed that because the plaintiff did not plead the insanity of her daughter to excuse adultery, if and when shown in her reply, such defense was not available to her. From the very beginning of the trial and even before that, when depositions were taken of the doctors in California, it was perfectly evident that, if adultery was shown, which the plaintiff denied, the plaintiff was asserting the affirmative defense of insanity. It is true that much of the evidence on that subject was necessary to fix the need and value of necessaries furnished. But that cannot be said for such evidence as Mrs. Payer's letter to her mother of Sept. 27, 1938,—Mrs. Daugherty's testimony of the vacation trip, and other testimony of a similar nature. And evidence, no matter for what purpose it was received, is competent to be considered on all issues.

The defendant entered no objection to the issue of insanity being presented to the jury. The court's charge was clear and unequivocal and without objection. Upon the record, the plaintiff by motion could have amended her reply to include the affirmative defense of insanity at any time before or after judgment and the granting of such motion would have in no way been held as a surprise defense. While it might be said that it was error not to require such defense to be pleaded, yet no prejudice has resulted to defendant because of the deficiency of the reply. In all events, the first time the objection to such defense is presented is before this court and we hold that it is too late to urge such defense for the first time in the Appellate Court. The first assignment of error is therefore overruled.

The appellant's second and third claims of error must be overruled for the reason that they are based on the assumption that infidelity on the part of Mrs. Payer is not in dispute. As set forth in considering the first claim of error, this question upon the face of the record must be submitted to the jury. There is also considerable evidence of mental incapacity which is related to the time of the alleged misconduct.

The fifth claim of error is based upon the charge of the

court as to the quantum of proof required to sustain plaintiff's case, it being contended that the defendant's abandonment of his wife must be shown by clear and convincing proof. The defendant cites **Hardy v. Smith, 13 Oh Ap 399,** in support of his claim. That case, however, is not in point upon the undisputed facts in this case. Here there is no dispute but that the defendant abandoned his wife. His amended answer and his amended answer to the supplemental petition, pleaded the facts as follows:

"* * * having left Lida Creamer Payer by reason of the aggression of his said wife against the marital relationship * * *."

No issue is therefore raised as to whether she has been abandoned. Here the defendant has assumed an affirmative defense justifying his refusal to support his wife, which defense was made known to the plaintiff before she expended the monies which she now seeks to recover. The court's charge was therefore correct on the issues as presented by the pleadings.

The sixth claim of error is as follows:

"* * * in its charge to the jury as to the burden of proof with respect to the aggression causing the separation of his wife."

The defendant's claim seems to be that after the defendant introduced sufficient evidence to counter-balance the plaintiff's prima facie case of abandonment by evidence tending to show the wife's aggression as excusing the defendant from the duties of supporting his wife, the burden of proceeding then shifted to the plaintiff to show by the preponderance of the evidence that the wife was not guilty of the claimed aggression. Such claim is contrary to the general rules fixing the burden of proof. He who asserts the affirmative of an issue must sustain his claim by the greater weight of the evidence. The rule is so universally established that the citation of authorities is unnecessary.

The authorities cited by the defendant are cases where the wife abandons the husband. Under such circumstances a plaintiff seeking to recover for necessaries furnished the wife cannot make out a case without establishing that the abandonment of the husband by the wife was justified. In the case at bar, the husband defendant is trying to justify his abandonment of his wife. No case is cited, nor have we been able to find one, supporting this claim of error. It is therefore overruled.

The seventh claim of error is without merit. It is true that gross neglect of duty and extreme cruelty are alleged in the answer. The record discloses that this was done to avoid, if

possible, placing the charge of adultery of record with full knowledge on the part of the plaintiff that this would be the defendant's defense. A reading of the record shows that there is no testimony in the record to support a claim of gross neglect of duty or of extreme cruelty, unless it could be said that the two undelivered love letters would support such allegation. The defendant's testimony quoted above clearly demonstrates that he made no claim of failure of his wife to perform her marital duties.

The failure to charge on extreme cruelty was in all events an omission which, if the defendant felt himself entitled thereto, should have been requested when he was asked by the court if there were any further suggestions at the conclusion of the general charge. Having failed to request such additional instruction, whatever error was committed for failure to instruct on extreme cruelty was waived. **2 O. Jur., Part I, Pg. 352.** We therefore overrule the seventh claim of error.

The final claim of the defendant concerns an exclusion of evidence. One of the mental specialists was being cross-examined and was asked the question whether or not Mrs. Payer had ever told him about an episode which took place, "referring to a love affair outside of her home." The answer was, "Well, her mother did," to which answer an objection was sustained.

In the first place, the answer was not responsive to the question and for that reason the objection was properly sustained. It is also true that the answer was based on hearsay, and for that reason was inadmissible.

The defendant had the plaintiff (mother) on the stand and could have inquired of her revelations to the specialist. We find that the court ruled correctly on the objection and no error was committed.

From an examination of the entire record, the defendant was afforded a fair trial and he has been accorded substantial justice.

For the reasons stated, the judgment of the Common Pleas Court is affirmed. Exceptions noted. Order see journal.

HURD, J, THOMPSON, J, concur.